FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
7/14/2025
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-mc-52-RBJ
*(S.D.N.Y. Case No. 1:24-cv-03973 AS)*

TIMOTHY LEIWEKE, an individual,

    Movant,

    v.

UNITED STATES OF AMERICA,
LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,

    Respondents.

**NON-PARTY TIMOTHY LEIWEKE'S MOTION TO QUASH THE GOVERNMENT'S NON-PARTY DEPOSITION SUBPOENA, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER TO STAY DEPOSITION**

## I.  INTRODUCTION

Less than a week ago, to intentional media fanfare, the United States Department of Justice Antitrust Division ("DOJ Antitrust Division") unsealed a sealed indictment against Timothy Leiweke they had obtained the previous week. Now they seek to depose him in a related civil matter, despite the burden it creates and the obvious Fifth Amendment implications. Pursuant to Federal Rules of Civil Procedure 26(c), 45(d)(3), and D.C. Colo. LCivR 30.2, Non-Party Subpoena Respondent Timothy Leiweke, through his undersigned counsel, moves to quash the United States of America's non-party deposition subpoena to him (attached hereto as Ex. A-1) because it is unduly burdensome and unfairly seeks to impinge on Mr. Leiweke's constitutional

rights.  Alternatively, if the Court does not quash the subpoena, Mr. Leiweke moves for entry of a limited protective order staying Mr. Leiweke's deposition pending resolution of the criminal action against him.

The DOJ Antitrust Division has subpoenaed Mr. Leiweke's testimony in its civil antitrust action against Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster L.L.C., ("Ticketmaster") in the Southern District of New York (*United States of America et al. v. Live Nation Entertainment Inc. et al.*, Civil Action No. 1:24-cv-03973 (AS)) (the "Underlying Litigation").  In that action, the DOJ Antitrust Division alleges that Live Nation and Ticketmaster have committed various antitrust violations under Section 1 of the Sherman Act.  Mr. Leiweke is the CEO of non-party Oak View Group, LLC ("OVG"), which the DOJ Antitrust Division alleges was involved in a number of the business dealings and partnerships at the heart of its claims against Live Nation.

The overlap between the DOJ Antitrust Division's civil case and the DOJ Antitrust Division's indictment is undeniable.  Live Nation, a defendant in the civil case, is also featured in the indictment—as is its CEO Michael Rapino.  Live Nation is OVG's joint partner in the arena project that is at the heart of the indictment.[1]  Mr. Leiweke's co-founder and board member of OVG, Irving Azoff, was formerly the CEO of Ticketmaster and Live Nation's executive chairman.  Mr. Azoff is featured in the DOJ Antitrust Division's indictment as a key person on the e-mails cited in the indictment, received a

---

[1] The DOJ Antitrust Division's indictment is focused on an alleged antitrust violation in connection with a OVG and Live Nation joint venture partnership to develop an arena for a public university in Austin, Texas. *See* Ex. A-4 ¶¶ 21,26.

2

promise of non-prosecution by the DOJ Antitrust Division in the criminal matter, and was deposed in the DOJ Antitrust Division civil action. OVG and Mr. Leiweke are singled out numerous times in the DOJ Antitrust Division's civil complaint (though neither are named as parties)—OVG is referenced approximately 80 times and Mr. Leiweke is referenced nine times.

Before the indictment, Mr. Leiweke agreed to appear at a deposition on July 16, 2025, in Denver, Colorado, pursuant to the DOJ Antitrust Division's subpoena. Ex. A, Cramer Decl., ¶ 4. However, as noted, on July 8, 2025, the DOJ Antitrust Division unsealed a criminal indictment against Mr. Leiweke alleging that as CEO of OVG, he violated Section 1 of the Sherman Act in connection with the selection process for an arena at the University of Texas in 2018. *Id.*, ¶ 13. OVG and Live Nation were partners in the 2018 solicitation and remain partners in the ongoing contract related to the project.

Forcing Mr. Leiweke to testify in the DOJ Antitrust Division's civil suit would be unfair and significantly prejudice Mr. Leiweke, placing him in a position of either surrendering or invoking his Fifth Amendment rights as part of a civil action in which his testimony is not necessary and where allowing it to proceed would allow the DOJ Antitrust Division to use the more expansive civil discovery rules to improperly further its criminal action.

For all of these reasons, the Court should grant Mr. Leiweke's motion to quash, or, in the alternative, stay his deposition until his criminal action is resolved.

## II. CERTIFICATE OF CONFERRAL

Pursuant to D.C. Colo. LCivR 7.1(A), counsel for Mr. Leiweke certifies that they conferred in good faith with counsel for the DOJ Antitrust Division on July 11 and July 14, 2025, regarding the relief Mr. Leiweke seeks in this Motion. *See* Declaration of Shane P. Cramer attached hereto as Ex. A ("Cramer Decl."), ¶ 13. The DOJ Antitrust Division indicated that it will oppose Mr. Leiweke's Motion.[2] *Id.* Counsel also certifies that they conferred in good faith with Counsel for Live Nation and Ticketmaster, which cross-noticed Mr. Leiweke's deposition, on July 11, 2025. Ex. A, Cramer Decl., ¶ 14; Ex. A-2. Counsel for Live Nation indicated they do not oppose the relief sought by Mr. Leiweke. Ex. A, Cramer Decl., ¶ 14.

## III. FACTUAL BACKGROUND

### A. The Underlying Litigation.

In the Underlying Litigation, the DOJ Antitrust Division alleges that Live Nation has unlawfully monopolized the live event sector, and seeks, among other things, the forced sale of Ticketmaster. *See* Amended Complaint in the Underlying Litigation (attached hereto as Ex. A-3). Many of the DOJ Antitrust Division's antitrust allegations against Live Nation involve Live Nation's alleged dealings and contracts with OVG. As stated above, the overlap of allegations and central witnesses is undeniable. Ex. A, Cramer Decl., ¶ 8; Ex. A-4. The actions and credibility of the common witnesses are

---

[2] In fact, the DOJ Antitrust Division's stated intent to oppose to this motion and its unwillingness to postpone it pending the criminal action has already placed a burden on Mr. Leiweke, a non-party witness, by forcing him to bring this motion.

central to both and crucial to DOJ Antitrust Division's cases in both forums. For example, the DOJ Antitrust Division alleges that in 2022, Live Nation and OVG entered into a long-term ticketing services agreement, which makes Ticketmaster the exclusive primary ticketer for certain venues owned by OVG and obligates OVG to "advocate for" exclusive agreements with Ticketmaster for more than 100 venues that OVG manages. Ex. A-3, ¶ 78. The Complaint also alleges that Live Nation and OVG have agreed to cooperate and not compete in the promotion and arena consulting spaces. *See, e.g.*, Ex. A-3, ¶¶ 73, 76. More broadly, the DOJ Antitrust Division accuses Live Nation, through its alleged partnerships and dealings with OVG, of violating federal and state antitrust laws. *See* Ex. A-3.

**B.     The Indictment.**

On July 8, 2025, the DOJ Antitrust Division unsealed an indictment that had been returned against Mr. Leiweke a week earlier, on July 1, 2025. It alleges that Mr. Leiweke violated Section 1 of the Sherman Act in connection with a joint venture partnership between OVG and Live Nation. *See* Ex. A-4. Contemporaneously with unsealing the indictment against Mr. Leiweke, the DOJ Antitrust Division issued a press release and was featured in numerous publications, including the Wall Street Journal, where a senior Department of Justice official gave off the record comments.[3] It also

---

[3] Dave Michaels, *Stadium Developer CEO Charged with Bid-Rigging Over New Texas Arena*, Wall Street Journal (July 9, 2025), https://www.wsj.com/us-news/law/stadium-developer-ceo-charged-with-bid-rigging-over-new-texas-arena-b84cd432?gaa_at=eafs&gaa_n=ASWzDAjyTHvI4XiW_rj0c9xaypHEFOivEkCtgVzUwza

announced it had reached non-prosecution agreements with all the other members of the alleged conspiracy. Notably, as part of its non-prosecution agreement, OVG was not required to and did not admit that anyone acting on behalf of the company (including Mr. Leiweke) had engaged in any wrongdoing.

## C. Status of Discovery in the Underlying Litigation.

In or around May 2025, the DOJ Antitrust Division served Mr. Leiweke, non-party OVG's CEO, with a deposition subpoena in the Underlying Litigation calling for compliance in Denver.[4] Ex. A-1. After good-faith negotiations, the deposition was scheduled for July 16, 2025, at undersigned counsel's office in Denver. Ex. A, Cramer Decl., ¶ 4.

Mr. Leiweke had previously met with and been interviewed by the DOJ Antitrust Division in connection with the civil suit. *Id.*, ¶ 5. He was willing to sit for the deposition until it came to light that the DOJ Antitrust Division had simultaneously secured an indictment against him for criminal antitrust violations. Now, Mr. Leiweke asks the Court to quash or stay the deposition subpoena given the prejudice he will incur should it be permitted to go forward.

---

UUGdhJFiCDO45RWt7osDZYVY%3D&gaa_ts=686eb670&gaa_sig=RIxY5cuxhZJ44ciLS37vGAI0MivbvpmfTSa5VnpcbWr3Zf1-5Lk6IXk8UrRFuX-hPmlLLspEeZYHNI_gGMBsMQ%3D%3D (Last visited July 14, 2025).

[4] On May 23, 2025, Mr. Leiweke's deposition was cross-noticed by Live Nation and Ticketmaster. *See* Ex. A-2. As noted above, Live Nation and Ticketmaster do not oppose Mr. Leiweke's motion.

The DOJ Antitrust Division has already deposed at least three OVG representatives. OVG's Senior Vice President, Andy Rentmeester, was deposed on July 3, 2025. Ex. A, Cramer Decl., ¶ 11. The Co-Chairman of OVG's Stadium and Arena Alliance, Peter Lukko, was deposed on June 25, 2025. *Id.* Counsel also understands that the DOJ Antitrust Division deposed Mr. Azoff, OVG's co-founder and a member of OVG's Board of Directors. *Id.* The DOJ Antitrust Division has noted the deposition of OVG's President, Chris Granger, for July 24, 2025. *Id.*, ¶ 12.

Further, under Mr. Leiweke's leadership, OVG produced more than 25,000 documents in response to a document subpoena in the Underlying Litigation, and more than 60,000 documents in response to prior civil investigative demands related to the DOJ Antitrust Division's investigation into the live entertainment industry, all at significant expense to the company. *Id.*, ¶ 10. Mr. Leiweke also voluntarily met with the DOJ Antitrust Division in early 2024, prior to its filing of the complaint in the Underlying Litigation. *Id.*, ¶ 9.

## IV.     ARGUMENT

**A.   The Court Should Quash the Subpoena Based on Mr. Leiweke's Fifth Amendment Right Against Self-Incrimination and Because It Is Unduly Burdensome.**

   **1.   The Court Should Quash the Deposition Subpoena Because It Seeks Information Protected by the Fifth Amendment.**

This Court has the authority to quash a subpoena that seeks "disclosure of privileged or other protected matter." Rule 45(d)(3)(A)(iii). "The Fifth Amendment … guarantees [Mr. Leiweke's] privilege against self-incrimination." *United States v. Richards*, 958 F.3d 961, 968 (10th Cir. 2020); *see also* U.S. Const. amend. V. This

7

privilege **protects even innocent individuals** ensnared by ambiguous circumstances or a criminal investigation, covering any statement that could serve as a "link in the chain" for prosecution. *See Ohio v. Reiner*, 532 U.S. 17, 19-20 (2001); *Grunewald v. United States*, 353 U.S. 391, 421 (1957); *see Hoffman v. United States*, 341 U.S. 479, 486 (1951).

The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise *embraces* those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486 (emphasis added). Non-party deponents who face prosecution in a criminal action face an impossible situation because failing to invoke the Fifth Amendment means the deponent runs the risk of prosecutors using his deposition testimony in pursuit of criminal charges. *See United States v. Jones*, 703 F.2d 473,475 (10th Cir. 1983); *see also McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) (explaining the Fifth Amendment privilege protects party and non-party witnesses alike).

Here, Mr. Leiweke's rights under the Fifth Amendment cannot be disputed. He has already been indicted and it is the DOJ Antitrust Division that has brought both the criminal and civil actions. Thus, there is significant "danger that the government might use [his deposition] to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination." *Cruz v. Cnty. of Dupage*, No. 96-cv-7170, 1997 WL 370194, at *3 (N.D. Ill. June 27, 1997). Moreover, it is unique in that the DOJ Antitrust Division controls

both actions, and brought the indictment that puts Mr. Leiweke in the unfair and untenable position.

As noted, the Underlying Litigation and the indictment, both pursued by the DOJ Antitrust Division, share substantial overlap. Both allege Sherman Act violations that allegedly apply to OVG's venue development and operations, as well as its relationship with Live Nation. *See* Ex. A-4. Both involve the actions and credibility of many of the same central individuals. *See id.* For example, the Underlying Litigation targets an alleged 2022 agreement between OVG and Live Nation, which governs exclusive ticketing, concert promotion, and venue management, and which implicates the live event industry's business, economics, and market dynamics. *See* Ex. A-3. The Amended Complaint references OVG 80 times and specifically references Mr. Leiweke nine times as "Oak View Group's CEO." *See id.*

The indictment alleges that Mr. Leiweke, as OVG's CEO, violated the Sherman Act in connection with the development of an arena project under a joint venture partnership with Live Nation and others. Ex. A-4. It similarly involves OVG's venue development and competitive practices in the same industries. *See id*. Importantly, the DOJ Antitrust Division always has the unilateral power to increase the scope of its criminal investigation against Mr. Leiweke, including superseding the current indictment. This overlap heightens the risk that civil testimony in the Underlying Litigation could prejudice Mr. Leiweke in the related criminal case.

Mr. Leiweke's good-faith cooperation—overseeing OVG's production of over 85,000 documents and meeting voluntarily with the DOJ Antitrust Division (*see* Ex. A,

9

Cramer Decl., ¶ 10)—should not now be used as a sword to force him to waive his Fifth Amendment rights. His deposition would compel a choice: testify and risk self-incrimination or invoke the privilege, potentially triggering some adverse consequences in the Underlying Litigation or some future action. Mr. Leiweke is the only proposed deponent who would be forced to make this choice as he is the only person who has been charged in the indictment.

The DOJ Antitrust Division's dual role as prosecutor in both cases exacerbates the constitutional risks facing Mr. Leiweke. The DOJ Antitrust Division's use of its power in pursuing its parallel actions only compounds the risk to Mr. Leiweke of being forced to testify in the Underlying Litigation in a way that prejudices his criminal defense. Moreover, the non-prosecution agreements reached between the DOJ Antitrust Division and Legends and OVG, provide cover to all employees but Mr. Leiweke, so the DOJ Antitrust Division has unfettered access to a range of other witnesses from the companies. The Court should quash the DOJ Antitrust Division's subpoena.

### 2. The Court Should Quash the Subpoena Because It Imposes an Undue Burden on Mr. Leiweke.

The DOJ Antitrust Division's subpoena to Mr. Leiweke is also unduly burdensome, given Mr. Leiweke's non-party status and the risks to him of being forced to testify. As such, the Court should also quash the subpoena under Rule 45(d)(3)(A)(iv) (requiring the Court to quash or modify a subpoena that "subjects a person to undue burden").

Courts in this district recognize non-party status as a critical factor in assessing undue burden, weighing it against the subpoena's relevance, necessity, and scope.

*See, e.g.*, *Echostar Commun. Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue); *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-cv-01611, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014) (citation omitted) (in determining whether a subpoena subjects a person to undue burden, courts consider a number of factors, including "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request, and the burden imposed on the subpoenaed party"); *DISH Network, LLC v. INNET*, No. 13-cv-00832, 2014 WL 1628132, at *9 (D. Colo. April 24, 2014) (non-party status is a significant factor in the decision to require disclosure). "In determining whether a subpoena imposes an undue burden, the court weighs the burden to the subpoenaed party against the value of the information to the requesting party." *King v. Solvay S.A.*, No. 14-cv-00196, 2014 WL 4267457, at *2 (D. Colo. Aug. 28, 2014).

Requiring Mr. Leiweke to sit for a deposition in this case will unduly burden him by forcing him to expend unnecessary time and resources preparing for, and testifying at, his deposition rather than continuing his ongoing business while also preparing his defense in the criminal action. As stated above, he has already faced the burden of bringing this motion. Imposing these burdens on Mr. Leiweke is entirely unnecessary here, where the DOJ Antitrust Division has many alternative avenues to discover the relevant information it is seeking. OVG has produced more than 85,000 documents in connection with the Underlying Litigation. *See* Ex. A, Cramer Decl., ¶ 10. The DOJ

Antitrust Division has deposed OVG's Senior Vice President (Mr. Rentmeester), the Co-Chairman of OVG's Stadium and Arena Alliance (Mr. Lukko), and OVG's co-founder and board member (Mr. Azoff). *See id.*, ¶ 11. The DOJ Antitrust Division has also scheduled the deposition of OVG's soon to be interim CEO, Mr. Granger, for July 24, 2025. *See id.*, ¶ 12. These OVG representatives almost certainly have the same, if not more, information about all of the DOJ Antitrust Division's claims in the Live Nation civil matter than does Mr. Leiweke.

This fact alone counsels strongly in favor of quashing the subpoena, particularly given Mr. Leiweke's status as a high-level OVG Executive. *See Naylor Farms, Inc. v. Andadarko OGC Co.*, No. 11-CV-01528-REB-KLM, 2011 WL 2535067, *1 (D. Colo. June 27, 2011) (recognizing that under the "apex doctrine," the court may protect a high-level corporate executive from the burdens of a deposition). Moreover, if there are other areas of testimony that the DOJ Antitrust Division believes it needs from OVG after taking these depositions, it could serve a deposition subpoena seeking testimony from other OVG employees who are not under criminal indictment or a corporate representative under Rule 30(b)(6).

Requiring Mr. Leiweke to testify is duplicative and unnecessarily burdensome, particularly given his non-party status and the risk that doing so will infringe on his Fifth Amendment rights. As such, the Court should quash the subpoena. *See Rhea v. Apache Corp.*, 833 F. App'x 186, 190-91 (10th Cir. 2020) (an order directing production from a non-party over that party's objection must protect that party from significant expense resulting from compliance); Rule 45(d)(3)(A)(iv).

### B.     Alternatively, the Court Should Stay Mr. Leiweke's Deposition Pending Resolution of His Criminal Trial.

Many of the same considerations that militate in favor of granting Mr. Leiweke's motion to quash the DOJ Antitrust Division's subpoena also support the issuance of a protective order staying his deposition.  A court may stay parallel civil litigation if "the interests of justice seem to require a stay," which includes assessing "the extent to which a party's Fifth Amendment rights are implicated."  *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009).  In making this determination, courts in the Tenth Circuit consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the [criminal] case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Fine v. Tumpkin*, No. 17-cv-02140, 2018 WL 317466, at *3 (D. Colo. Jan. 8, 2018); *see also In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 20-cv-02977, 2021 WL 9098346 (E.D. Okla. Oct. 20, 2021) (applying these factors when analysing a motion to stay brought by non-parties).  Here, these factors tip sharply in favor of granting a stay.

#### 1.     The Underlying Litigation Is Sufficiently Similar to Mr. Leiweke's Criminal Case to Warrant a Stay.

"The extent of overlap is the most important factor in ruling on a motion to stay." *Berreth v. Frazee*, No. 19-cv-00027-PAB, 2019 WL 10250759, at *2 (D. Colo. Apr. 1, 2019) (internal quotation marks and citations omitted).  This is because "self-incrimination is more likely where the issues in a criminal case significantly overlap with those in a civil case." *Myers v. Brewer*, No. 17-2682-CM, 2019 WL 7293584, at *2 (D.

13

Kan. Dec. 30, 2019).  At the same time, the two actions need not be identical to warrant a stay.  *Fine*, 2018 WL 317466, *4 (finding that, "Plaintiff's argument that the issues in the criminal case are only a portion of those alleged in this case is a non-starter").

Staying a parallel suit is particularly warranted where the government is pursuing both actions.  See *Cruz*, 1997 WL 370194, *3.  In *Cruz*, the Court expressly recognized the "danger that is inherent" that litigants face in such a situation, explaining that "when both actions are brought by the government, there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination."  *Id.*

Here, the DOJ Antitrust Division indicted Mr. Leiweke and the same DOJ Antitrust Division subpoenaed Mr. Leiweke's testimony in the Underlying Litigation.  As demonstrated above, the two actions share a close nexus as both allege Sherman Act violations tied to OVG's relationship with Live Nation and its venue and ticketing operations.  This factor tips sharply in favor of granting a stay.

Even were the Court to find that there is not sufficient overlap between the two actions, the remaining factors still support a stay.

### 2. Mr. Leiweke Has Been Indicted.

The second factor, the status of the DOJ Antitrust Division's criminal action against Mr. Leiweke, tips sharply in favor of staying the deposition.  "The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned."  *Berreth*, 2019 WL 10250759 at *2; *see also Creel v. Jahani*, No. 09-cv-01063, 2009 WL 4250065, at *4 (D. Colo. Nov. 25, 2009) (same); *M.D. Diet*

*Weight Loss & Nutrition Clinic, L.C. v. Absolute Weight Loss & Nutrition Ctr., LLC*, No. 05-cv-605, 2006 WL 2471524, at *1 (D. Utah Aug. 24, 2006) (same). The "potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act." *Berreth*, 2019 WL 10250759, at *2; *Chapman v. Hedderman*, No. 20-cv-825, 2021 WL 3686687, at *2 (W.D. Okla. July 30, 2021) (same).

The timing overwhelmingly supports a stay here. Mr. Leiweke was indicted in the Western District of Texas on July 1, 2025, for alleged antitrust violations. While Mr. Leiweke has not yet been arraigned, his criminal trial will likely be scheduled before the trial in the Underlying Litigation, which is not set to begin until March 2, 2026. *See* Amended Civil Case Management Plan and Scheduling Order in the Underlying Litigation (the "Scheduling Order," attached hereto as Ex. A-5); *Chapman*, 2021 WL 3686687, at *2 (granting stay where defendant "has already had a criminal information filed against him in state court, which increases the risk of self-incrimination and potentially reduces the need for a long delay in the civil case"). Moreover, the current case schedule in the Underlying Litigation appears to permit the interim deadlines for depositions to be extended by the parties on consent, provided all discovery is completed by November 7, 2025. Ex. A-5.

    **3.    Any Prejudice to the DOJ Antitrust Division Does Not Weigh Against a Stay.**

The DOJ Antitrust Division's interest in resisting a stay of Mr. Leiweke's deposition is minimal. Mr. Leiweke seeks only to stay his own deposition, not any other

15

depositions or discovery that the government may be entitled to take. This fact mitigates any prejudice the DOJ Antitrust Division may suffer from a limited stay of Mr. Leiweke's deposition. *See Myers*, 2019 WL 7293584 at *3 (finding important that "plaintiff already has been able to depose other witnesses in the case"); *Graham for Est. of Huff v. Garfield Cty. Det. Ctr.,* No. 17-cv-634, 2018 WL 4035971, at *3 (W.D. Okla. Aug. 23, 2018) (finding that, "because the vast majority of the document production will not be stayed, because certain depositions will be taken, and because the stay will be limited in duration, the Court finds any prejudice to plaintiff is minimal").

The DOJ Antitrust Division has deposed three other high-level OVG representatives and has noted the deposition of a fourth for later this month. The only deposition Mr. Leiweke seeks to stay is his own, and any information he might have is likely duplicative of one or other witnesses that the DOJ Antitrust Division has deposed, or could depose in the future, without putting them in the same quandary Mr. Leiweke would face. This factor, too, weighs in favor of a stay.

### 4. A Stay Would Safeguard Mr. Leiweke's Constitutional Rights.

While the DOJ Antitrust Division would not suffer any real prejudice from a stay, Mr. Leiweke would suffer significant prejudice if a stay were not issued. First, granting a stay would protect Mr. Leiweke's Fifth Amendment right against self-incrimination. *See, e.g., Graham*, 2018 WL 4035971, at *2-3 (a limited stay of discovery will avoid being faced with the choice of asserting the Fifth Amendment privilege against self-incrimination). It crucially will also prevent the DOJ Antitrust Division from using the broader civil discovery rules to prejudice Mr. Leiweke in its criminal action. As the Tenth

16

Circuit recognized in *Creative Consumer Concepts*, "[a] district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution."  563 F.3d at 1080-81; *see also Fine,* 2018 WL 317466, *5; *Graham*, 2018 WL 4035971, *2.  That is exactly Mr. Leiweke's concern here should his deposition in the Underlying Action go forward.

Moreover, forcing Mr. Leiweke into a position where he may need to invoke his Fifth Amendment privilege is unfair, given that "one of the Fifth Amendment's 'basic functions is to protect innocent men who otherwise might be ensnared by ambiguous circumstances.'" *See Ohio*, 532 U.S. at 21 (quoting *Grunewald*, 353 U.S. at 421) (alterations omitted).  This factor, too, weighs in favor of a stay.

### 5. The Court's and Public's Interests Support Staying Mr. Leiweke's Deposition.

The remaining factors assess the Court's and public's interests.  It is well-settled that the Court's and the public's "interests in the prompt and fair resolution of criminal matters take precedence" over any competing interest they have in the swift resolution of civil litigation.  *Windham for Marquis Props., LLC v. Snyder*, No. 18-cv-00063, 2018 WL 4100512, at *5 (D. Utah Aug. 28, 2018).  Moreover, the public has a substantial interest in "ensuring the criminal proceedings continue untainted by civil litigation."  *See Glover v. Upmann*, No. 19 CV 03738, 2020 WL 1433801, at *4 (N.D. Ill. Mar. 24, 2020) ("[I]t is important to avoid any possible interference with the prosecution . . . [that] could

arise if civil discovery, including sworn testimony, is elicited while the criminal charges are still pending."").

Granting a limited stay would also further the Court's and public's interest in "adequately protect[ing] against an improper spill-over of information, whether intentional or merely incidental, between the two proceedings." *Graham*, 2018 WL 4035971, *3. For all these reasons, both remaining factors strongly favor of a stay.

### IV.     CONCLUSION

For the reasons set forth above, non-party Timothy Leiweke respectfully requests that this Court grant this motion and quash the DOJ Antitrust Division's deposition subpoena. Alternatively, Mr. Leiweke requests that the Court issue a protective order staying his deposition pending resolution of the DOJ Antitrust Division's criminal action.

Respectfully submitted this 14th day of July 2025.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Michael J. Hofmann*
Michael J. Hofmann
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Tel: (303) 861-7000
Michael.hofmann@bclplaw.com

Shane P. Cramer
(*Admission Application Pending*)
999 Third Avenue, Suite 4400
Seattle, WA 98104
Tel: (206) 600-6650
Shane.cramer@bclplaw.com

# CERTIFICATE OF SERVICE

      I hereby certify that on this 14th day of July 2025, a true and correct copy of the foregoing **NON-PARTY TIMOTHY LEIWEKE'S MOTION TO QUASH THE GOVERNMENT'S NON-PARTY DEPOSITION SUBPOENA, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER TO STAY DEPOSITION** was sent via electronic mail to the following:

Alex Cohen
U.S. Department of Justice Antitrust Division
450 Fifth St. NW, Suite 4000
Washington, DC 20530
Tel: (347) 244-2502
Alex.cohen@usdoj.gov

Lindsey S. Champlin
Jennifer L. Giordano
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2122
lindsey.champlin@lw.com
Jennifer.giordano@lw.com
*Attorneys for Live Nation Entertainment, Inc. and Ticket Master L.L.C.*

                                                  */s/ Michael J. Hofmann*
                                                  Michael J. Hofmann