1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No. 25-mc-0052-RBJ
 3
        TIMOTHY LEIWEKE, an individual,
 4
                Movant,
 5
        vs.
 6
        UNITED STATES OF AMERICA,
 7      LIVE NATION ENTERTAINMENT, INC.,
        and TICKETMASTER, L.L.C.,
 8
                Respondents.
 9

10      -------------------------------------------------------------

11                     REPORTER'S TRANSCRIPT
                    (MOTION TO QUASH HEARING)
12
        -------------------------------------------------------------
13

14          Proceedings before the HONORABLE R. BROOKE JACKSON,

15      Senior Judge, United States District Court for the District

16      of Colorado, commencing at 8:29 a.m., on the 16th day of

17      July, 2025, United States Courthouse, Denver, Colorado.

18                          APPEARANCES

19          MICHAEL J. HOFMANN and SHANE P. CRAMER, Bryan Cave
        Leighton Paisner, LLP, 1700 Lincoln Street, Suite 4100,
20      Denver, Colorado 80203, appearing via video teleconference
        for the movant.
21
            ALEX COHEN, U.S. Department of Justice, 450 Fifth
22      Street NW, Washington, DC 20530, appearing via video
        teleconference for the respondent.
23
                       MARY J. GEORGE, FCRR, CRR, RMR
24            901 19th Street, Denver, Colorado 80294
               Proceedings Reported by Mechanical Stenography
25               Transcription Produced via Computer
```

1          P R O C E E D I N G S

2          (Call to order of the court at 8:29 a.m.)

3          THE COURT:  All right.  Good morning.  This is

4    Leiweke versus Live Nation -- well, it's Leiweke versus the

5    United States, essentially, 25-mc-52.  Set for a hearing on

6    a request for an injunction this morning.  Let me start with

7    your appearances, please.  For the plaintiff, I'll call it,

8    Mr. Leiweke.

9          MR. HOFMANN:  Good morning, Your Honor.  This is

10   Mike Hofmann from Bryan Cave appearing for the movant,

11   Mr. Leiweke.  With me is Shane Cramer from my office in

12   Seattle.  Also on the call but not appearing is my colleague

13   Jenny Durkan, also from Seattle.

14         THE COURT:  All right.  Thank you, gentlemen and

15   lady.  By the way, I'm sorry that you're stuck with my side

16   view, but that's just the way it's set up for this video

17   conference.

18         Is anyone appearing for Live Nation or --

19         MS. CHAMPLIN:  This is Lindsey Champlin on behalf

20   of Live Nation.  I'm sorry, I couldn't get the video to work

21   but wanted to join on time.

22         COURTROOM DEPUTY:  I need her last name, again,

23   please.

24         THE COURT:  Champlin, C-h-a-m-p-l-i-n.

25         MS. CHAMPLIN:  That's right.

1      THE COURT:  And then for the United States must be

2  Mr. Cohen.

3      MR. COHEN:  Good morning, Your Honor.  Alex Cohen

4  on behalf of the United States.  Also I'm joined by Bonny

5  Sweeney, also DOJ.

6      THE COURT:  I have a couple of questions for you

7  and then i'll let you make your arguments.  When is this

8  deposition scheduled to be held?  I ask that because your

9  subpoena says the 17th, but your papers say the 16th.

10      MR. HOFMANN:  Your Honor, this is Mike Hofmann.  My

11  understanding is the deposition was scheduled for today in

12  our offices here in Denver.

13      THE COURT:  So that's by agreement, one day

14  different than what the subpoena says.  That's why I --

15      MR. HOFMANN:  I believe that's correct.

16      THE COURT:  That's why I set it at 8:30, because I

17  was guessing that you did mean it would be today, and I was

18  guessing that it would be at 9:00 so I figured I better

19  slide this in earlier.

20      MR. HOFMANN:  Sure.

21      THE COURT:  My second question is this:  If the

22  deposition were to go forward, Mr. Leiweke has two choices.

23  He can exercise his rights under the Fifth Amendment as to

24  any question where he thinks it might tend to incriminate

25  him; or we can do, as courts have done in the past, and that

1     is order that his testimony, assuming that he doesn't

2     exercise his Fifth Amendment rights, would be limited

3     strictly to the civil case, would be sealed, could not be

4     used in the criminal case except for purposes of perjury or

5     impeachment.

6          My question is:  Have you folks considered that

7     second option as a way to resolve this?

8          MR. HOFMANN:  Your Honor, this is Mike Hofmann.  I

9     don't believe that second option has come up in discussions

10    with the Government.  I'll defer to Mr. Cohen.

11         MR. COHEN:  We have not discussed that -- that

12    option, Your Honor.

13         THE COURT:  Well, what about it, then, folks?

14         MR. COHEN:  I think I -- speaking for the

15    Government, I think I would need to confer with my

16    colleagues.  Our strong preference is for the first option,

17    which we think is more appropriate under the law.

18    Mr. Leiweke should sit and answer questions that do not pose

19    any risk of self-incrimination and, on the

20    question-by-question basis, assert the Fifth Amendment if he

21    deems it appropriate.

22         MR. HOFMANN:  Your Honor, this is Mike Hofmann.  I

23    agree that we would have to consult with our client on this.

24    He's being asked to make important decisions in a very short

25    time frame.  He was -- the indictment against him was

1  unsealed a week ago and the Government's asking him to

2  decide whether to assert his Fifth Amendment privilege

3  effectively within a week.  So if that's an option Your

4  Honor wants the parties to consider, we're happy to do that,

5  but I can't answer for my client sort of on the fly here.

6        THE COURT:  Well, there's always hope that maybe

7  counsel would resolve these disputes, but apparently you

8  haven't and perhaps won't, so we'll proceed.

9        I've read the Leiweke team's papers.  That is, I've

10  read the motion, I've read the various attachments to the

11  motion.  So what we'll do this morning is we'll start with

12  the Government's position since they haven't filed anything.

13        Mr. Cohen, you may proceed.

14        MR. COHEN:  Thank you, Your Honor.  And if it

15  pleases the Court, I'd like to start with just a little bit

16  of the -- of the underlying civil case.  So --

17        THE COURT:  We're not getting --

18        MR. COHEN:  This is an anti --

19        THE COURT:  Say that again.  It didn't come through

20  clearly.

21        MR. COHEN:  Sorry.  Can you hear me now?

22        THE COURT:  We can hear you all along but you cut

23  out and cut back in.  What you said, I think, is that you

24  want to educate me a little bit about the civil case.  I've

25  read the papers about the civil case.  I think I have a

1   pretty good understanding of what the issues are in that

2   case.  I've read the indictment.  I have a pretty good

3   understanding, I think, of what's in the indictment.

4          It strikes me that there is some degree of overlap,

5   but it is by no means total.

6          MR. COHEN:  That's correct, Your Honor.  We believe

7   that's limited to no overlap.  Mr. Leiweke is a highly

8   important fact witness in this case.  He's the co-founder of

9   Oak View Group, which was formed in 2015, and until last

10  week served as its CEO.  Oak View develops, manages, and

11  provides consulting services to venues across the United

12  States --

13         THE COURT:  Mr. Cohen, you're reading something

14  from a paper.  Again, I remind you that I have read what's

15  in the file.  I know what you're reading from and I'd rather

16  have you just argue, not read from a text.

17         MR. COHEN:  Sure.  So Mr. Leiweke's indictment is

18  for a single charge related to bid rigging in, you know, a

19  venue development in Austin, Texas.  We -- we do not plan to

20  ask Mr. Leiweke any questions about that specific

21  development project if we were allowed to proceed with the

22  deposition.

23         There are a couple of categories of relevant

24  information that Mr. Leiweke has as it relates to agreements

25  between Oak View Group and Live Nations, specifically venue

1    consulting services, agreements not to consult on concert

2    promotions, and venues to TicketMaster pursuant to a 2022

3    incentive deal.

4         None of those things we believe are relevant for

5    the criminal indictment.  And so, again, under the law here

6    in the District of Colorado, as well as the law in SNY, we

7    would ask that Mr. Leiweke sit for his deposition, answer

8    the questions that do not risk self-incrimination, and

9    assert his Fifth Amendment right on the question-by-question

10   basis.

11        THE COURT:  May I ask, sir, what is the purpose of

12   your taking this deposition?

13        MR. COHEN:  So Mr. Leiweke is -- like I said, is a

14   very important fact witness.  And, you know, for the topics

15   that he does not assert the Fifth Amendment on, those topics

16   and those evidence are an important part of our case.  We

17   allege lots of partnerships and arrangements between Oak

18   View Group and Live Nation.  Oak View Group acts as Live

19   Nation's hammer in a number of situations and helps maintain

20   its monopolies in concert promotion, ticketing, and

21   amphitheater use.  And so he has relevant information.

22        We believe a lot of that relevant information is

23   not overlapping with the criminal indictment, and so that

24   testimony is key for us, Your Honor.

25        THE COURT:  Perhaps I need to clarify my question.

1    When I ask what is the purpose of the deposition, is it for

2    discovery or preservation of testimony or both?

3            MR. COHEN:  It's both, Your Honor.

4            THE COURT:  With respect to discovery, I understand

5    from the plaintiff's papers that you did have an opportunity

6    to meet with Mr. Leiweke and presumably he answered some of

7    your questions and gave you some of this information.  Yes?

8            MR. COHEN:  We did meet with Mr. Leiweke.  It was a

9    pre-complaint interview.  He did provide some information

10   related to some of the claims.

11           THE COURT:  So --

12           MR. COHEN:  But not all of the claims.

13           THE COURT:  So you have, for purposes of discovery,

14   already obtained some of that information.  Also, according

15   to the papers, you've already taken depositions of three

16   other executives who presumably know much of what

17   Mr. Leiweke knows.  Correct?

18           MR. COHEN:  I would disagree slightly there, Your

19   Honor.  We have taken two depositions to-date.  Both of

20   those individuals pointed to Mr. Leiweke as having unique

21   individual knowledge about certain arrangements and conduct.

22   It's also our understanding, based on information and belief

23   in the documents produced to-date that Mr. Leiweke had

24   individual conversations with other members of the industry

25   where Oak View Group employees would not have been involved,

1    not participated in those conversations, and would have no

2    knowledge of those conversations.

3            THE COURT:  So what you are telling me, Mr. Cohen,

4    is, I think, this:  That in your opinion, Mr. Leiweke has

5    some relevant information, that is, relevant to the issues

6    in the Southern District of New York case, that you have not

7    yet obtained either from him, when he voluntarily talked

8    with you, or from the three other deponents.

9            MR. COHEN:  Yes, that's correct, Your Honor.

10           THE COURT:  But, of course, if you take his

11   deposition and he asserts the Fifth, then you won't be

12   getting any information with respect to those questions as

13   to which he pleads the Fifth, right?

14           MR. COHEN:  That is correct.  Although as we've

15   said, we do not believe that his invocation of the Fifth

16   Amendment to all potential questions would necessarily be

17   appropriate.  And if we don't depose him and there's no

18   opportunity for him to plead the Fifth, there's no

19   opportunity for us to seek relief in connection with those

20   questions.

21           THE COURT:  Well, I don't know where you would be

22   seeking the relief, but I suppose you're correct.  What else

23   do you have to say, sir?

24           MR. COHEN:  Well, on the motion to quash, I think

25   those are the primary issues.  I would -- we have not had a

1    chance, obviously, to submit our brief, so I would

2    respectfully ask that if the Court was inclined to rule

3    against us, that we have an opportunity to -- to submit a

4    brief on the issue.

5         THE COURT:  Well, you've got a deposition scheduled

6    in half an hour.  I guess I have --

7         MR. COHEN:  Oh, I --

8         THE COURT:  -- I have to give you a decision.  I

9    didn't schedule a deposition but you did.

10        MR. COHEN:  With apologies, Your Honor, I think we

11   should correct the record here.  And I apologize if there

12   was any confusion.  By agreement with counsel for

13   Mr. Leiweke, we had agreed to postpone the deposition

14   pending resolution of this motion.  So none of the -- none

15   of the lawyers are currently in Colorado and the deposition

16   is not going to take place in the next 30 minutes.

17        If you deny the motion, we would seek to schedule

18   that deposition as soon as possible at a mutually convenient

19   time.

20        THE COURT:  I don't remember your telling me that

21   in the papers, but of course you didn't file the papers,

22   they did.  But I don't think their papers told me that the

23   deposition was off by agreement.  All right.  Thank you,

24   Mr. Cohen.

25        Who's going to make the argument for the -- I'll

1    call him plaintiff, Mr. Leiweke?

2         MR. HOFMANN:  Good morning, Your Honor.  Mike

3    Hofmann for Mr. Leiweke.  I would point out I am in

4    Colorado, Denver, but it's not a special appearance; I live

5    and work here.

6         I think the most important thing to remember here

7    is Mr. Leiweke is a nonparty in this civil action.  And that

8    two weeks ago the plaintiff in that civil action indicted

9    him in a related criminal case, unsealed that indictment a

10   week ago.  And then when we asked, said that the Government

11   was going to try to continue to force him to give a

12   deposition while under indictment in a civil -- pardon me,

13   in a related criminal case.

14        THE COURT:  I know all that from reading your

15   papers.

16        MR. HOFMANN:  Yeah.  And I think the point that's

17   come out this morning is there is really no reason for the

18   Government to try to force Mr. Leiweke to decide within

19   effectively a few weeks of his indictment, whether to assert

20   or waive his Fifth Amendment privilege.  He is a nonparty.

21        The Government told you this morning that while

22   there are agreements between OVG and other participants in

23   the industry that they want to ask Mr. Leiweke about, well,

24   if those agreements are with OVG, they can ask OVG about

25   them.  They've already taken three depositions of OVG

1    people.  They have a fourth scheduled for next week.

2         They can notice a 30(b)(6) deposition of OVG.  And

3    everybody at OVG -- I can't say too much about this -- but

4    has a nonprosecution agreement, except for Mr. Leiweke, the

5    one person that they're pressing to force a deposition with.

6         Now, Mr. Cohen also said, "Well, we heard from

7    other people that Mr. Leiweke had conversations with others

8    that nobody else can testify about."  That's clearly not

9    correct.

10         THE COURT:  How do you know that?  How does he know

11    that and how do you know that?  Only Mr. Leiweke knows that.

12         MR. HOFMANN:  No, if you have a conversation with

13    another person, the other person can testify about it.  The

14    Government could depose the people that they say -- can

15    identify as having these conversations and ask them.  As far

16    as I know, none of those people are under indictment.  None

17    of them have to decide whether to assert their Fifth

18    Amendment privilege.  So the information the Government says

19    it needs, it can get it from someone it hasn't just indicted

20    and put to this choice.  So that's the point one.  I think

21    the Government -- the Government can get this information

22    from other sources.

23         The other thing is -- I think Your Honor pointed

24    this out -- there's sort of no point to this.  If

25    Mr. Leiweke is forced to decide whether to assert his Fifth

Amendment privilege way early in the process than criminal

offenders are supposed to have to make this decision,

they're supposed to be allowed to make this decision at

trial.  The Government's trying to advance this on

Mr. Leiweke by months.

But if Mr. Leiweke is forced to make that choice,

99.9 percent of the time I'm confident he'll take the Fifth

Amendment.  And that's not going to do the Government any

good at all.  He's not a party to this civil case.  They

can't use that testimony to try to prove their case against

the actual defendants there.  It would be a pointless

exercise and an undue burden to make Mr. Leiweke sit in a

deposition room for seven hours, taking the Fifth Amendment,

especially when -- sorry, Your Honor.  Especially when he

has a lot of other things going on right now.  He has this

indictment --

THE COURT:  Mr. Leiweke agreed to this deposition

before the indictment came down.  He already accepted the

so-called burden.  And in the context of these cases, a

seven-hour deposition is a minimal burden.  I'm not

concerned about the burden; I'm concerned about the

constitutional issue.

MR. HOFMANN:  And the constitutional issue I think

is a significant -- I agree with you.  Before he knew he had

been indicted, he had agreed to -- he agreed to sit for a

1    deposition.  But being indicted is a major event in

2    someone's life.  It gives rise to constitutional rights that

3    people ordinarily don't have.  One of the most important

4    protections for the innocent is the Fifth Amendment.  And

5    criminal defendants are entitled to room and space and time

6    to decide whether they're going to assert or waive that

7    privilege.

8            The Government is trying to advance this on

9    Mr. Leiweke into a matter of weeks -- to a matter of weeks

10   to force him to make this decision.

11           THE COURT:  Well, not necessarily.  I started this

12   hearing by asking about the possibility of his testifying in

13   the civil case, but that the deposition be ordered by the

14   Court to be kept under seal and used only for the civil case

15   and not used in any way, shape or form for the criminal

16   case, except possibly for the purposes of perjury or

17   impeachment.

18           Now, if the Court issued that order, he doesn't

19   have to make the election for purposes of the criminal case

20   now.  Right?

21           MR. HOFMANN:  Well, I think he still would.  I

22   mean, if you say he's going to give a civil deposition that

23   may be used in the criminal case for purposes of perjury or

24   impeachment, then the criminal prosecutors must have read

25   that deposition; otherwise how could they use it to impeach

1    him.

2          So I am not -- and no aspersions at all on

3    Mr. Cohen, we just met this morning, but it is not a

4    comfortable situation for a criminal defendant to be told,

5    "Give a deposition to the Government that just indicted you,

6    but don't worry, it won't be used against you in a criminal

7    case."

8          I think even if the Court entered that order, I

9    think he would still have a right -- which I predict he

10   would assert -- to take the Fifth Amendment in that

11   deposition.

12         THE COURT:  Well, he --

13         MR. HOFMANN:  So --

14         THE COURT:  That's up to him.  That's up to him and

15   that's up to him on a question-by-question basis.

16         MR. HOFMANN:  Well, I agree, but the point is he

17   shouldn't be put to that decision, especially when he's not

18   a party.  I mean, usually this comes up where you have a

19   civil case where the criminally indicted person is a party;

20   they're a defendant.  The plaintiff says, "Look, I need to

21   prove my case.  The person's going to take the Fifth."

22         And the Court sometimes says, "Well, the person can

23   sit and take the Fifth; won't draw an adverse inference."

24         I mean, this is not that situation.  He is a

25   nonparty.  He is being put to this choice for effectively no

1    good reason.  He's not the defendant.  His taking the Fifth

2    is not going to affect the Government's ability to prove its

3    case or not against Live Nation and TicketMaster and --

4              THE COURT:  How do you know that?

5              MR. HOFMANN:  Well, because he's a nonparty.  I

6    mean, I don't think -- maybe I'm wrong.  Maybe the whole

7    Government -- the Government's whole theory here is, "We

8    will indict Mr. Leiweke; we will depose him in the civil

9    case.  He'll take the Fifth.  We'll then go to the Southern

10   District and tell them to draw an adverse inference against

11   the defendants."  Maybe that's what they're going to do.

12   That's what they're trying -- that's sort of even worse,

13   right?

14             THE COURT:  Well, that's outside the scope of

15   what's presented to me.  That would be for Judge -- the

16   judge in the Southern District of New York whose name is

17   Judge Subram- -- I'm sorry, Judge, if I mispronounced it --

18   S-u-b-r-a-m-a-n-i-a-n -- Judge Subramanian would have to

19   decide whether any adverse inference could be drawn before

20   the jury in that case.

21             I don't know -- I don't know what he would do.  I

22   think I know what I would do -- I think I know what I would

23   do, but I don't know what he would do.

24             MR. HOFMANN:  I understand, Your Honor.  I think he

25   may have just finished the Puff Diddy trial.

1        But I guess the point that I would make is if

2    that's what's going on and the Government really wants this

3    solely for the purpose not of finding anything out, but

4    trying to get an adverse inference against parties because a

5    nonparty has invoked his Fifth Amendment right, I mean, I

6    think that makes this even more unfair, not just to

7    Mr. Leiweke, but to the defendants, Live Nation and

8    TicketMaster.

9        I mean, it would be -- the Government could indict

10   what -- who -- they could indict what they say are important

11   witnesses in any civil case; ask to take their deposition.

12   That person naturally will probably take the Fifth and the

13   Government will win its civil case -- or try to win the

14   civil case to say, "See, this person I indicted took the

15   Fifth," drawing an adverse inference.

16       That's not a legitimate function of noticing a

17   deposition in a civil case.  So I think I come back to where

18   Your Honor started, is there's really no reason to force

19   Mr. Leiweke to make this choice about his constitutional

20   rights now.  He's being arraigned next week.  We will get a

21   trial date for the criminal case.  That case will be tried.

22   Once that case is tried, the Fifth Amendment issues are off

23   the table.

24       The civil case in the Southern District isn't set

25   for trial until March of next year, so we think that the

1    thing to do to protect Mr. Leiweke's rights is to quash the

2    subpoena.  Protects his rights; protects him from burden,

3    which I do think exists and is a factor; and really causes

4    no harm to the Government's ability to prove its case

5    against the actual defendants in the Southern District.

6              THE COURT:  So you mentioned the arraignment in the

7    criminal case.  Are you or Mr. Cramer involved in the

8    criminal case on behalf of Mr. Leiweke?

9              MR. HOFMANN:  I am not involved in the criminal

10   case in Texas.  I don't know whether Mr. Cramer's entered an

11   appearance yet.  I can -- I can defer to him on that.

12             MR. CRAMER:  Ms. Durkan and I are both involved in

13   that case; yes, Your Honor.

14             THE COURT:  All right.  Well, I don't mean to

15   exclude Ms. Durkan in my questioning, but you said she

16   wasn't making an appearance.

17             So what, if anything, can you tell me about the

18   potential schedule in the criminal case, Mr. Cramer.

19   Mr. Cramer.

20             MR. HOFMANN:  Sorry, Your Honor.

21             MR. CRAMER:  Yes, Your Honor.  Mr. Leiweke is set

22   to be arraigned next Monday, the 21st.  We will get the

23   schedule some time thereafter.  At this point, I don't know

24   that I know more about the schedule than that.

25             THE COURT:  Well, I've had some experience with

criminal antitrust cases brought by the Department of
Justice.  And in my experience, at least, these are not
cases that go to trial six weeks after the arraignment.
That kind of a case typically is somewhat drawn out.  There
are speedy trial issues, to be sure, but my experience is
that both sides, frankly, will want a reasonable amount of
time to prepare their case and their defense.  Do you agree
with that?

MR. HOFMANN:  Your Honor -- Your Honor, this is
Mike Hofmann.  I'm familiar with some of your antitrust
cases and others in the district.  I agree with that.  What
I would add to what Mr. Cramer said is we will know a lot
more by the end of the day Monday about the schedule of the
criminal case; we will know the schedule of the criminal
case.

So if Your Honor is thinking about the length of
time that a deposition will be postponed, we would
effectively know that by Tuesday of next week.

MR. CRAMER:  And this is Mr. Cramer.  I apologize
as the person who put together the brief.  I was relying on
sort of the local rules and the agreement we had with
Mr. Cohen that we didn't explicitly tell Your Honor that the
deposition was off pending the briefing schedule.

If Your Honor is -- would like more information
about scheduling and those things, one option would be to

1     set the briefing schedule and let the briefing on the motion

2     play out, unless Your Honor has heard enough today that you

3     think you are in a position to rule.

4              THE COURT:  Well, the reason I'm asking about the

5     criminal case schedule is that you have asked for an

6     alternative remedy here.  You've asked to quash the

7     deposition subpoena, but in the alternative to stay the

8     deposition pending resolution of the criminal case.  So with

9     that in mind, I considered the schedule in the civil case as

10    set forth in the scheduling order that was just issued as an

11    amended order by Judge Subramanian a couple of weeks ago;

12    and the discovery cutoff for fact depositions is July 28th.

13             Now, I can assume for the sake of argument that if

14    I were to issue a stay, Judge Subramanian would permit a

15    deposition later than July 28th in the circumstances, but

16    that's the current deadline.  But even more importantly,

17    there's a trial day of March 2d, 2026, which will come upon

18    us before we know it.  And I'm sure that was a negotiated

19    date to clear schedules and this and that.

20             And I don't know about the parties in that case --

21    Ms. Champlin would have something to say about that -- but I

22    think from the Court's standpoint the Court probably

23    wouldn't want to postpone the civil case just because there

24    was one deposition still to be taken until the criminal case

25    plays out.  And "plays out" could even involve an appeal.

1          So it seems to me that given the juxtaposition of

2     the dates between the two cases, a stay doesn't make any

3     sense.  The Court either has to quash the deposition or not.

4     And I suppose that could be revisited after the schedule is

5     determined, but I'm here this morning because you folks

6     wanted an immediate hearing and that's what I'm providing.

7          All right.  Does anybody have anything further to

8     say?

9          MR. HOFMANN:  Not for the plaintiff/movant,

10    Mr. Leiweke, Your Honor.

11         MR. COHEN:  Not for the Government.  Sorry, go

12    ahead.

13         MS. CHAMPLIN:  I have two quick points on behalf of

14    Live Nation if now is appropriate, Your Honor.

15         THE COURT:  Sure.  Go ahead, Ms. Champlin.

16         MS. CHAMPLIN:  Live Nation supports the plaintiff's

17    motion to quash the deposition.  And I also just wanted to

18    state for the record that, you know, we issued a

19    cross-subpoena only because DOJ noticed the deposition.  We

20    would withdraw our subpoena if DOJ's gets quashed or is

21    withdrawn.

22         THE COURT:  Yes, I think that was stated in the

23    papers, but thank you for confirming that.

24         All right.  For purposes of today's hearing, which

25    I found out about only yesterday afternoon, I did a little

1    bit of research of my own and I found a case that I thought

2    was useful in terms of setting forth the factors that courts

3    should consider in a situation like this.  That case is *In*

4    *Re:  CFS-Related Securities Fraud Litigation*.  The

5    particular decision to which I am referring is reported at

6    256 F.Supp 2d 1227.  It's a decision of a Magistrate Judge

7    in the Northern District of Oklahoma from 2003.  And at page

8    1237, the judge in the *CFS* case states that:  Courts in

9    these circumstances often consider six factors in making a

10    decision.  And he cites appellate authority for these six

11    factors.

12        Now, I will say to you, since you perhaps have not

13    read that case or similar cases yet, that the facts are not

14    quite the same as what we have here.  For example, in the

15    *CFS* case, contrary to this case -- and this fits into what

16    Mr. Hofmann was saying -- you have the defendant in a

17    criminal case being also a party in the civil case, and you

18    have almost 100 percent overlap in terms of the issues.  And

19    there are other fact differences.

20        But what is significant to me is the six factors

21    that were identified because they make common sense as well

22    as legal sense.  And those factors are, No. 1, the overlap

23    of issues between the civil and criminal cases.  Two, the

24    status of the criminal case.  Three, the interest of the

25    plaintiff; in this case that would be of the United States.

Four, the interest of the defendant; in this case that would
be our current plaintiff, Mr. Leiweke.  Five, the interest
of the Court; meaning the interest of the Court in the civil
case.  And, six, the interest of the public.

        And based on your arguments, as well as what I
could read in the papers, this is how I see those six
factors applying to the present situation:

        No. 1, the overlap of issues between the two cases.
Unlike the *CFS* case, there is, so far as I can tell, little
if any overlap of the issues; but certainly there's some
overlap of the evidence.  The criminal case here, as was
mentioned, accuses Mr. Leiweke of a conspiracy to engage in
bid rigging in relation to a sports arena that was built in
Austin, Texas, for the University of Texas.  And he is
accused of conspiring with one or more others to cause them
not to engage in bidding, leaving his company as the only
bidder.

        Based on my review of the complaint -- or I should
say amended complaint in the Southern District of New York
case, the Texas arena is not an issue; rather, that case
concerns a conspiracy to monopolize certain ticketing type
venues such as TicketMaster or Live Nation.

        So I can see how Mr. Leiweke's testimony is
relevant potentially to that case.  I can see why some of
the same other executives probably will give evidence in

1    both cases, but there isn't a kind of overlap.  I don't

2    think the first factor really favors either side in the

3    current dispute before me.

4         Second factor, the status of the criminal case.

5    We've talked about that.  It's brand-new.  At first I was

6    thinking that Mr. Leiweke and his team might be angry that

7    the Government just came down and filed the indictment and

8    made it public in the criminal case, but on the other hand,

9    of course, it would have been much worse, and I think

10    inappropriate, if the Government had kept its criminal case

11    under wraps, taken the deposition, and then sprung the

12    criminal indictment.  At least they have given him the

13    opportunity to take the Fifth if that's what he ultimately

14    chooses to do.

15         But the only real significance of the criminal case

16    status is that I don't think a stay of the deposition

17    pending resolution of the criminal case makes any sense

18    given where we are in the civil case versus where we are in

19    the criminal case.  The civil case is going to proceed, I

20    think, on a as fast, if not faster, schedule than the

21    criminal case.  So the Court won't consider granting a stay.

22         The third factor here is the interest of the

23    Government.  Yes, the Government has an interest in pursuing

24    evidence that it needs in the civil case.  I have to accept

25    Mr. Cohen's representation that in Government counsel's

1    opinion Mr. Leiweke has evidence to give that is relevant

2    that they have not been able to obtain from their other

3    deponents or from their off-the-record meeting with

4    Mr. Leiweke.

5        Mr. Leiweke does seem to be a rather central

6    character with the organizations, or some of them, that are

7    involved in the civil case.  And I'm not surprised that the

8    Government thinks he has evidence to give.  The other side

9    of the coin is that they do at least know some of what

10    Mr. Leiweke has to say.  They do at least know what three

11    other executives have to say.  And they're not going to get

12    much value out of a deposition of Mr. Leiweke if, as

13    Mr. Hofmann predicts, he would exercise his Fifth Amendment

14    rights to many, if not most, of the questions asked.

15        I would say the interest of the Government slightly

16    favors denying the injunction.

17        No. 4, the interest of Mr. Leiweke.  That's really

18    of utmost importance to this Court because he's facing a

19    criminal indictment.  That is a big deal.  And that, I'm

20    sure, is very troubling to him and to his representatives

21    and his family.  He can take the Fifth.  That's a right that

22    he has.  It's an important right.  It's a constitutional

23    right.  There might be some slight risk to him in the sense

24    that possibly the Government could try to persuade Judge

25    Subramanian to allow the jury in that trial to hear that

1     Leiweke has taken the Fifth and to draw a negative inference

2     from it, even though he's just a witness, not a party, but

3     that strikes me as fairly remote.  I'm not at all sure that

4     Judge Subramanian would permit such a thing.  Nor do I think

5     it would have that much impact on that case.  And certainly

6     Ms. Champlin doesn't think it would have much impact on her

7     defense in that case.  So it's a concern.

8          But I have also mentioned that if he doesn't want

9     to assert the Fifth but wants to protect his rights in the

10    criminal case, that could be done by sealing the deposition

11    and preventing anyone from using it in the criminal case

12    other than for purposes of impeachment or perjury, which are

13    very limited uses, and something that Mr. Leiweke can

14    certainly avoid by simply telling -- telling the truth and

15    providing truthful testimony in the criminal case, if in

16    fact he even were to testify in the criminal case, which is

17    always fairly unusual.

18         But that would be a procedure that would allow him

19    at least to have a reasonable choice between taking the

20    Fifth or not.  Either way, he wouldn't be prejudicing his

21    position in the criminal case in my view.

22         The fifth factor is the interest of the Court.

23    We're talking about the Southern District of New York.  It

24    has an interest in keeping that case moving, but it is

25    moving.  The schedule is set.  And I don't think it's going

1    to affect the Court much regardless of what the Court here

2    does today.  So I think it's a nonfactor in this case.

3         And, finally, the interest of the public.  The

4    public has an interest in the prompt resolution of civil

5    cases, for sure.  But that's going to happen regardless of

6    what I do.  The public has an interest in the prosecution of

7    criminal cases.  That too will happen regardless of what I

8    do.  The public has an interest in the protection of

9    constitutional rights, and I don't think that Mr. Leiweke's

10   constitutional rights are in grave danger based on what I do

11   here.

12        The bottom line is that I've considered those

13   factors and all the other information I have received, and

14   my decision is to deny the motion to quash the deposition of

15   Mr. Leiweke.  It is this Court's view that he can either

16   choose to exercise his Fifth Amendment rights -- certainly

17   appropriate -- or not.  And to preserve the "not" option,

18   the Court orders that the deposition of -- excuse me -- of

19   Mr. Leiweke taken by the Government in the Southern District

20   of New York case that I am not enjoining, will be sealed

21   from public access and may not be used for any purpose other

22   than the prosecution of the civil case in the Southern

23   District of New York.  And specifically may not be used for

24   any purpose in the criminal case in Texas other than for the

25   possibility of impeachment or to root out perjury.  Those

1   issues, if they ever presented, to be determined by the

2   criminal judge in Texas.

3          That is the order of the Court.  Is there anything

4   else this morning?

5          MR. HOFMANN:  Nothing from the movant, Your Honor.

6   Thank you.

7          THE COURT:  Hearing nothing, we will be in

8   adjournment.  Thank you, folks.  Good day.

9          MR. COHEN:  Thank you, Your Honor.

10          MR. CRAMER:  Thank you, Your Honor.

11          MS. CHAMPLIN:  Thank you, Your Honor.

12      (Proceedings concluded at 9:15 a.m.)

13                  *     *     *     *     *

14                    REPORTER'S CERTIFICATE

15      I certify that the foregoing is a correct transcript

16   from the record of proceedings in the above-entitled matter.

17      Dated at Denver, Colorado, this 17th day of July, 2024.

18

19

20

21          MARY J. GEORGE, FCRR, CRR, RMR

22

23

24

25